UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOTTIE DUNNING,                      : <br>     Plaintiff,                          : <br>                                     : <br> v.                                      : <br>                                     : <br> NATIONAL RAILROAD PASSENGER  : <br> CORPORATION A/K/A AMTRAK,      : <br>     Defendant.                        : | CIVIL ACTION NO. <br> 3:13-CV-00635 (JCH) <br><br><br><br> AUGUST 28, 2014 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. Nos. 36, 37)**

**I.  INTRODUCTION**

Plaintiff Lottie Dunning ("Dunning") has charged defendant National Railroad Passenger Corporation, a/k/a Amtrak ("Amtrak") with strict liability and negligence for the personal injuries and losses she alleges she suffered from consumption of a contaminated burger she purchased while on board an Amtrak train.  Complaint ("Compl.") (Doc. No. 1-1).  Amtrak has moved for summary judgment on both counts of the Complaint.  Motion for Summary Judgment (Doc. Nos. 36, 37).  For the reasons provided below, the Motion is **GRANTED**.

**II.  FACTUAL BACKGROUND[1]**

Dunning was a passenger on Amtrak Train 90 on June 22, 2011.  Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 43) at

---

[1] Amtrak did not submit a properly drafted Statement of Material Facts.  Compare District of Connecticut Local Rule 56(a)1-(a)2 (requiring that movant provide "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried") with Defendant's Local Rule 56(a)(1) Statement ("Def.'s L.R. 56(a)1 Stmt.") (Doc. No. 37-2).  In addition, though Amtrak cites repeatedly to deposition testimony and Dunning's response to its interrogatories, see Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 37-1) at 1-3, 6; Def.'s L.R. 56(a)1 Stmt. at ¶ 2, it did not file these materials with the court.  The court has thus constructed this factual background section from exhibits filed by Dunning in support of her Opposition to Amtrak's Motion for Summary Judgment.

1

Ex. A.  While on board, Dunning purchased a cheeseburger from a kitchen cart operated by Amtrak.  Id.  Dunning reported that the cheeseburger "didn't taste right," and that she threw the burger away.  Id.  Subsequent to eating the cheeseburger, Dunning began to experience chest pains and shortness of breath, and began vomiting on the train.  Id.; id. at Ex. B, at 1.

Upon the train's arrival to Washington, D.C., Dunning was transported to Howard University Hospital, to which she was admitted.  Id.  Dunning informed treating medical staff that she ate the cheeseburger at approximately 7:30 P.M. and began vomiting at 8:00 P.M.  Id. at Ex. B.  Dunning continued to vomit after admission to the hospital; the vomiting continued into the next day.  Id. at Ex. C.  Dunning remained admitted to the hospital for five days before she was released.  Id. at Ex. E.  Following her release, she was treated at Norwalk Community Health Center for residual symptoms.  Id.  She continued to experience pain in her left abdomen for three to four weeks after her release.  Id.

## III. STANDARD OF REVIEW

A motion for summary judgment may be granted only when there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. Rule 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must come forward with specific facts showing that there

is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must present evidence that would allow a reasonable jury to find in its favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

**IV.    DISCUSSION**

In her Complaint, Dunning alleges that Amtrak is strictly liable for the personal injuries she sustained from her consumption of the allegedly contaminated cheeseburger, in violation of the Connecticut Products Liability Act ("CPLA"), Connecticut General Statutes sections 52-572m et seq.  Compl. § 1, ¶ 11.  When reviewing a cause of action grounded in strict liability for a product defect pursuant to the CPLA, Connecticut courts have adopted the strict liability test established at section 402A of the Restatement (Second) of Torts.  Walters v. Howmedica Osteonics Corp., 676 F.Supp.2d 44, 49 (D. Conn. 2009) (citing Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199 (1997)).  Section 402A imposes liability only when the product is in a

defective condition that is unreasonably dangerous to "the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. (citations omitted).

Dunning also alleges that Amtrak was negligent in failing to properly prepare, inspect, and warn of unsafe food, as well as its selling of unsafe food, and that this negligence caused her personal injury and losses. Compl. § 2, ¶ 10. To maintain this claim for negligence, Dunning must establish that Amtrak (1) had a duty to her; (2) that it breached that duty; (3) that its breach of that duty caused her injury; and (4) that she suffered an actual injury. Walters, 676 F.Supp.2d at 51.

Assuming, arguendo, that the CPLA's product defect provisions apply to food products, Dunning has failed to come forward with any evidence that the cheeseburger she purchased from Amtrak was in a defective condition when she consumed it, or that her illness was attributable to her consumption of the cheeseburger, and thus has failed to create a genuine issue of material fact on this matter. Dunning asserts that a dispute of fact exists over the causation of her injury because her medical records[2] report that her injury followed her consumption of the cheeseburger she purchased from Amtrak. However, the records themselves do not establish that her injury was caused by the

---

[2] The court agrees with Dunning that the physician record prepared by Dunning's treating physician is admissible absent an expert disclosure for the treating physician. See Barack v. American Honda Motor Co., Inc., 293 F.R.D. 106, 108 (D. Conn. 2013) ("[A] party seeking to use [a] treating physician does not . . . need to provide a written expert report . . . because treating physicians are not retained or specially employed to provide expert testimony in the case." (internal quotation marks omitted)). However, the court notes that Amtrak's objection to the evidence provided by Dunning is not that Dunning failed to provide an expert disclosure for her treating physician, but rather that the evidence provided, including the physician record, cannot support a jury finding that Dunning's consumption of the cheeseburger sold to her by Amtrak caused her illness. See Reply to Objection to Motion for Summary Judgment (Doc. No. 47) at 3-4.

cheeseburger. Rather, they reflect only Dunning's own report to Amtrak and medical staff that she began vomiting after consuming the cheeseburger. See Pl.'s Opp. at Ex. A (Amtrak non-employee injury/illness record reporting that Dunning stated that she was experiencing shortness of breath and chest pain, and that she attributed these symptoms to "eating a sandwich from Cafe CAR (Burger)"); id. at Ex. B (Howard University Hospital inpatient admitting history and physical record reporting that Dunning experienced approximately 10 episodes of vomiting after eating a burger); id. at Ex. C (Howard University Hospital nurse focus notes reporting that, "after eating a burger [Dunning] began to vomit, at least ten times"); id. at Ex. D (Howard University Hospital nutritional assessment of Dunning reporting that "[p]er oral intake related to abd[ominal] pain 2d gastroenteritis as evidenced by . . . vomiting 2d consumption of bad food"); id. at Ex. E (Community Health Center record that Dunning reported that she "[w]as hospitalized in Washington DC for 5 days for food poisoning on 6/29 after eating a cheeseburger on Amtrak train"); id. at Ex. F (Howard University Hospital emergency physician record reporting that Dunning "ate 'bad food' food near metro → 10 > episodes of vomiting"). The inpatient admitting history and physical record submitted by Dunning does include an "assessment/diagnosis" that Dunning was suffering from gastroenteritis "likely 2d/2 burger eaten viral in nature." Pl.'s Opp. at Ex. B. Nothing within this record, however, suggests that medical staff based their diagnosis of gastroenteritis on anything more than Dunning's own statements and her presenting symptoms. The cause of Dunning's illness poses a medical question that cannot be answered by a layperson; thus, Dunning's own statements cannot establish causation here. See Fane v. Zimmer, Inc., 927 F.2d 124, 131 (2d Cir. 1991) (determining that

causation of a complex physical injury raised a medical question requiring expert medical opinion evidence).

Amtrak has proffered an expert opinion from a medical doctor that discredits Dunning's claim that the cheeseburger caused her illness, on the grounds that the time between ingestion of a contaminated food and the onset of symptoms is typically hours to days for food-borne bacterial pathogens, and that her symptoms and the nature of the food she consumed are inconsistent with that associated with pathogens with shorter incubation periods.  Expert Report (Doc. No. 34-1).  Based on this, as well as the fact that Dunning has a history of gastrointestinal disturbances and that her white blood cell count at the time she received medical treatment was consistent with a viral infection, not a food-borne bacterial illness, the expert opinion concludes that Dunning's illness was likely secondary to a viral infection.  Id.  Dunning has provided no expert opinion or other evidence to contest Amtrak's expert account.  Thus, the court determines that no material issue of fact exists as to the causation of Dunning's illness, and grants summary judgment to Amtrak on Dunning's strict liability claim.

Dunning's negligence claim must similarly fail.  Dunning cannot prove that Amtrak breached a duty to her by selling her unsafe food because she has offered no evidence that the cheeseburger she purchased from Amtrak was unsafe at the time of her purchase; nor, as explained above, can she prove that the injury she suffered was caused by Amtrak's selling unsafe food to her.  Summary judgment is thus granted to Amtrak on Dunning's negligence claim.

**V.     CONCLUSION**

For the reasons aforementioned, Amtrak's Motion for Summary Judgment (Doc. Nos. 36, 37) is **GRANTED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of August, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge